**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | |
|---|---|
| **IN RE:** <br><br> **WOODLAKE PARTNERS, LLC,** <br><br> **DEBTOR** | **CASE NO. 14 – 81035** <br> **CHAPTER 11** |
| **PLAN OF LIQUIDATION** | |

Woodlake Partners, LLC (the "Debtor"), pursuant to 11 U.S.C. §§ 105, 363, 365, 506, 1123, 1129, 1141, and 1146 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure, proposes the following Plan of Liquidation (the "Plan").

**1. INTRODUCTION.** On September 19, 2014 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and an Order for relief was entered. On September 25, 2014, the Court entered an Order (Dkt. No. 29) authorizing the employment and appointment of Richard M Hutson, II as the Chief Restructuring Officer.

    **1.1.** The Debtor continues in possession of its assets and operates its business as a debtor-in-possession. No committee of unsecured creditors has been formed. Pursuant to various orders entered by the Court in response to the Debtor's motions and after notice and hearing, the Debtor obtained authority for the utilization of post-petition financing and otherwise complied with all requirements for operation and filing of necessary reports with the Court as mandated by the Bankruptcy Code, the Bankruptcy Rules, and Local Rules of the Court.

    **1.2.** Reference is made to the Disclosure Statement submitted for the Plan (the "Disclosure Statement") for a brief discussion of the Debtor's history, business, results of operations, historical financial information and properties, the results of post-petition operations, and an analysis of the Plan. All creditors entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan. In addition, there may be other agreements and documents that have been filed which are referenced in the Plan and/or the Disclosure Statement and which are available for review. No solicitation

materials, other than the Disclosure Statement, have been authorized by the Court for use in soliciting acceptances or rejections of the Plan.

2. **DEFINITIONS**.  For purposes of the Plan and accompanying Disclosure Statement, the following definitions shall apply and, unless otherwise indicated, the singular shall include the plural:

2.1.  <u>Administrative Expense Claim</u>:  Means a Claim against a Debtor or its Estate for a cost or expense of administration in the Chapter 11 Case that is entitled to priority or superpriority under sections 364(c)(1), 503(b), 503(c), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and in the ordinary course of owning and operating the Assets and business of the Debtor that is allowable under section 503(b) of the Code; (b) compensation for legal, financial, advisory, accounting and other professional services, and reimbursement of expenses awarded or allowed under sections 329, 330(a) or 331 of the Bankruptcy Code; (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any other Administrative Expense Claim including claims arising under section 503(b)(9) of the Code for goods delivered to the Debtor within twenty days prior to the Petition Date.

2.2.  <u>Allowed Claim</u>:  When used with respect to any Claim other than an Administrative Expense Claim, means a Claim that:

2.2.1.  is not a Disputed Claim and (a) for which a proof of claim or interest was filed on or before the date designated by the Court as the last day on which to file such proofs of claim in the Debtor's proceeding, or (b) which is listed in the schedules filed by a Debtor (unless listed as unliquidated, disputed or contingent) and, in either case, to which (i) no objection has been filed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or Order of the Court, or (ii) an objection has been timely filed and determined by Final Order, and then only to the extent the Order allows such Claim; or

2.2.2.  is Allowed (a) in any stipulation or other agreement between a holder of a Claim and the Debtor that, (i) if executed prior to the Effective Date, is approved by the Court, or (ii) if executed after the Effective Date, is not subject to Court approval, establishing the amount and nature of a Claim; (b) in any contract, instrument or other

agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Court; (c) pursuant to a Final Order; or (d) pursuant to the terms of the Plan. Claims estimated and temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Court shall not be considered "Allowed Claims" hereunder.

**2.3.**    <u>Assets</u>: All of the Debtor's property, rights and interests that are property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code.

**2.4.**    <u>Available Cash</u>: All cash of the Debtor's estate remaining to be distributed to the holders of Allowed Unsecured Claims after payment of Allowed Administrative Expense Claims, Priority Tax Claims and Secured Claims, less (i) the amount of cash estimated by the Debtor, from time to time, to be necessary to fund adequately the consummation of the Plan and final administration of the Chapter 11 Case after the Effective Date, and (ii) the amount of cash to be retained for the payment of Disputed Claims.

**2.5.**    <u>Bankruptcy Administrator</u>:  The United States Bankruptcy Administrator for the Middle District of North Carolina.

**2.6.**    <u>Bankruptcy Causes of Action</u>:  Any claim or cause of action which may be asserted by a debtor or a debtor-in-possession under sections 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

**2.7.**    <u>Bankruptcy Code</u>:  Provisions of Title 11, United States Code, as amended from time to time and applicable to these Chapter 11 Cases.

**2.8.**    <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure and the local rules of the Court, as amended from time to time and applicable to these Chapter 11 Cases.

**2.9.**    <u>BHF Collateral</u>: The real and personal property known and generally described as Woodlake Country Club, consisting of all or substantially all of the Debtor's Assets, <u>excluding</u> (i) the Debtor's equity interest in Magnolia at Woodlake, LLC, a wholly owned subsidiary, (ii) Lot 509, Section 5, Woodlake Country Club, to be conveyed in satisfaction of the Class 5 Secured Claim of Paul Davis and Agnes Gioconda, (iii) the Danker Collateral, (iv) the Hennings Collateral, (v) the Violet Collateral, and (vi) the Violet Alpha Collateral.

**2.10.**    <u>Cash Collateral Order</u>:  Any interim or final Order granting authority to use cash collateral, as amended from time to time.

**2.11.**    <u>Chapter 11 Case</u>:  The case commenced by the Debtor under chapter 11 of the

Bankruptcy Code, currently pending before the United States Bankruptcy Court for the Middle District of North Carolina, Case Numbers 14-81035.

**2.12.**  <u>Chief Restructuring Officer:</u>  Richard M. Hutson, II, or his successor in interest if so appointed by the Court.

**2.13.**  <u>Claim</u>:  A claim as defined in section 101(5) of the Bankruptcy Code.

**2.14.**  <u>Claims Bar Date</u>:  The date by which a proof of claim must be filed with the Court, which shall be, as applicable, (i) with respect to all creditors except a governmental unit, January 26, 2015, (ii) with respect to a governmental unit, March 19, 2015, (iii) with respect to claims arising from the rejection of any executory contract or unexpired lease, thirty (30) days from the Effective Date, or such other (whether earlier or later) deadline as may be set by the Court generally or with respect to any lease or contract rejected and (iv) with respect to cure claims arising from the assumption and assignment of any executory contract or unexpired lease in accordance with the sale of the project as provided below, the date established in the Confirmation Order.

**2.15.**  <u>Class</u>:  A class of Claims or Equity Interests as described in the Plan.

**2.16.**  <u>Collateral</u>:  Property of a Debtor which has been duly and properly pledged to a creditor to secure indebtedness, and which pledge (of whatever nature) has not been avoided.

**2.17.**  <u>Confirmation Date</u>:  The date on which the Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**2.18.**  <u>Confirmation Hearing</u>:  The hearing held by the Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**2.19.**  <u>Confirmation Order</u>:  The Order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**2.20.**  <u>Court</u>:  The United States Bankruptcy Court for the Middle District of North Carolina, and any appellate court that exercises jurisdiction over this case.

**2.21.**  <u>Credit Bid Right</u>:  The right of a holder of a Claim secured by a deed of trust to credit bid pursuant to section 363(k) of the Bankruptcy Code, in its discretion, up to the entire amount of the Allowed Secured Claim at a Sale.

**2.22.**  <u>Cure Claim</u>:  The right to payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an

executory contract or unexpired lease or as otherwise required by section 365(b) of the Code as a condition of assumption and assignment, so that the Debtor may assume and assign the contract or lease pursuant to sections 365 or 1123(b)(2) of the Code.

**2.23.** <u>Danker Collateral</u>: Unit 244, Shore Villas, Phase I, Woodlake Country Club.

**2.24.** <u>Debtor:</u> Woodlake Partners, LLC, formerly known as Woodlake Partners, Limited Partnership.

**2.25.** <u>DIP Financing Order</u>: The orders granting authority to obtain post-petition financing, as amended from time to time.

**2.26.** <u>DIP Lender</u>: Steiner & Co., the lender providing the post-petition financing facility approved by the Court.

**2.27.** <u>Disallowed Claim</u>: A Claim that has been disallowed by a Final Order or a stipulation or other agreement between a holder of a Claim and the Debtor.

**2.28.** <u>Disputed Claim</u>: Any Claim with respect to which (i) an objection has been interposed and has not been resolved by a withdrawal of such objection, by agreement or entry of a Final Order, (ii) the Debtor has scheduled as disputed, contingent or unliquidated, (iii) is listed on the Debtor's schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted by the holder varies from the nature or amount of such Claim as it is listed on the Debtor's schedules, (iv) is not an Administrative Expense Claim and is not listed on the Debtor's schedules, or (v) is set forth in an improper proof of claim or a proof of claim untimely filed.

**2.29.** <u>Distribution Date</u>: Any date on which distributions are to be made to holders of Allowed Claims pursuant to the terms and provisions of this Plan or upon approval of the Court.

**2.30.** <u>Effective Date</u>: The first day of the month following the Confirmation Date unless the Confirmation Order has been stayed pending appeal, or such other date as may be specified in the Confirmation Order or as extended pursuant to any further Order of the Court.

**2.31.** <u>Entity</u>: means a person (as defined in section 101(41) of the Bankruptcy Code), a firm, a limited liability company, a joint venture, an association, an unincorporated organization, an estate, a trust, a governmental unit or the Bankruptcy Administrator.

**2.32.** <u>Equity Interest</u>: Any common stock, membership interests, partnership interests or

other capital stock issued by the Debtor and outstanding immediately prior to the Petition Date, and any options, warrants or other rights with respect thereto (or as provided for in other instruments evidencing an ownership interest or the right to purchase or demand the issuance of any of the foregoing in the Debtor), including, without limitation, any (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends), (b) liquidation preferences, and (c) membership interest options and warrants.

**2.33.** Estate:  Property belonging to the Debtor on the Petition Date as defined by §541 of the Bankruptcy Code and other applicable law.

**2.34.** Final Decree:  The final decree entered by the Court pursuant to Bankruptcy Rule 3022.

**2.35.** Final Order:  An order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, (a) that has not been reversed, stayed, modified or amended, and as to which the time to appeal or petition for certiorari or move for a new trial, reargument or rehearing has expired, and as to which no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing that has been timely taken is pending, or (b) as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

**2.36.** Final Report:  A report to be filed by the Debtor with the Court upon and after completion of all acts required to achieve final consummation of the Plan, which report shall include, but not be limited to, all information necessary to meet the reporting requirements of the Court, the Bankruptcy Administrator, and the Plan.

**2.37.** Hennings Collateral: That certain 31.01 acre tract as shown on plat recorded in Plat Cabinet 11, Slide 900, Moore County Registry and more particularly described in deed recorded in Book 2880, Page 66, Moore County Registry.

**2.38.** Lease:  Any lease, lease extension, lease modification or lease renewal between the Debtor and a current or prospective tenant with respect to the leasing of space.

**2.39.** Liabilities:  Any and all claims, obligations, suits, judgments, damages, demands,

debts, rights, causes of action, Bankruptcy Causes of Action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence taking place on or prior to the Effective Date.

**2.40.** <u>Lien</u>:  A deed of trust, mortgage, judgment lien, materialman's lien, statutory lien, security interest, pledge, assessment, lease, adverse claim, levy, charging order, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

**2.41.** <u>Magnolia Interests</u>:  All the member interests in Magnolia at Woodlake, LLC, a wholly owned subsidiary of the Debtor, which in turn owns that certain 21.61 acre tract as shown on plat recorded in Plat Cabinet 11, Slide 501, Moore County Registry and more particularly described in deed recorded in Book 2568, Page 86, Moore County Registry, subject to (i) Moore County ad valorem taxes and (ii) the deed of trust recorded in Book 2568, Page 91, Moore County Registry, securing a Future Advance Promissory Note in favor of Mel Danker, his successors or assigns.

**2.42.** <u>Net Sale Proceeds</u>:  The proceeds derived from the sale of any real or personal property, after payment or provision for (i) a share of Administrative Expense Claims, as determined by the Court in the Order confirming the sale, (ii) costs of sale directly associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other costs directly related to the sale, and (iii) estimated quarterly fees payable to the Bankruptcy Court calculated on the basis of the sale price (excluding buyer's commission to a broker).

**2.43.** <u>Notice and Hearing</u>:  Notice and hearing as defined by section 102 of the Bankruptcy Code.

**2.44.** <u>Petition Date</u>:  September 19, 2014.

**2.45.** <u>Plan</u>:  This plan of liquidation, as the same may be amended, modified or supplemented from time to time.

**2.46.** <u>Priority Claim</u>:  An Allowed Claim that is unsecured and is entitled to priority under sections 507 or 364 of the Bankruptcy Code, excluding Priority Tax Claims.

**2.47.** <u>POA</u>: The Woodlake Property Owners' Association, Inc.

**2.48.** <u>Priority Tax Claim</u>: An Allowed Claim for federal, state or local taxes that is unsecured and is entitled to priority under sections 507 or 364 of the Bankruptcy Code.

**2.49.** <u>Pro Rata</u>: A proportionate distribution so that with respect to a particular Claim in a group or Class of Claims, a number (expressed as a percentage) equal to the proportion that the amount of any Claim in the group or Class bears to the aggregate amount of all Claims in such group or Class as of the date of determination.

**2.50.** <u>Released Parties</u>: Collectively and individually, the Debtor, the Chief Restructuring Officer and any of their current or former officers, directors, employees, members, managers, partners, advisors, attorneys, accountants, consultants or agents or other professional representing any of the foregoing.

**2.51.** <u>Sale</u>: The sale to be conducted by the Debtor under the supervision of the Bankruptcy Court after entry of the Confirmation Order, pursuant to which substantially all of the Debtor's Assets will be sold to the bidder submitting the highest and best offer.

**2.52.** <u>Secured Claim</u>: A Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code, and that has not been avoided.

**2.53.** <u>Substantial Consummation</u>: The date on which (i) the Debtor has substantially completed all requirements of the Plan as determined in accordance with § 1101(2) of the Bankruptcy Code or (ii) an Order of Substantial Consummation is entered by the Court.

**2.54.** <u>Unsecured Claim</u>: A Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Claim or a Priority Tax Claim.

**2.55.** <u>Violet Collateral</u>: That certain parcel consisting of 1.35 acres and home located at 929 McLaughlin Road, Vass, NC (Moore Co. Parcel No. 00992402).

**2.56.** <u>Violet Alpha Collateral</u>: Those certain parcels consisting of Lot 41, Lot 42, 1.08 acres, and 0.65 acres (Moore Co. Parcels Nos. 00042546, 00042547, 00042040, and 97001012).

**3.  ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY CLAIMS AND PRIORITY TAX CLAIMS**.  For purposes of the Plan, Administrative Expense Claims, Priority Claims and Priority Tax Claims shall be treated as follows:

    **3.1.**   <u>Administrative Expense Claims</u>: Except as otherwise provided herein, Administrative Expense Claims shall be allowed upon due request or application and in such amounts as may be determined by the Court after notice and hearing.

      **3.1.1.**   Actual and necessary costs and expenses incurred after the Petition Date and in the ordinary course of owning or operating the Debtor's Assets and businesses shall be paid in the ordinary course and in accordance with the payment terms thereof, except that in the event of a dispute with respect thereto such dispute shall be resolved by the Court after notice and hearing.

      **3.1.2.**   Fees and expenses incurred by attorneys, accountants, appraisers and other professionals retained by the Debtor shall be paid in such amounts as may be determined by the Court until such time as a Final Decree is entered in the Chapter 11 Cases.  Such professionals shall be compensated for services rendered in such capacity and reasonably necessary to the administration of these Estates, upon an hourly basis and at their customary hourly rates unless otherwise approved by the Court, not to exceed reasonable compensation for such services.

      **3.1.3.**   Amounts owed to the DIP Lender shall be paid in accordance with the terms of the DIP Financing Order and at closing of the Sale of the BHF Collateral.

      **3.1.4.**   With respect to all other Administrative Expense Claims, requests for allowance of such Claims shall be filed with the Court within 30 days after the Effective Date, or such other date as may be established by the Court.  Any such administrative expense claim that is not timely filed shall be disallowed and the holder of such claim shall be forever barred, estopped, and permanently enjoined from asserting such administrative expense claim against the Debtor or its estate.

      **3.1.5.**   Except as otherwise provided above or to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to less favorable treatment, the Debtor shall pay all Allowed Administrative Expense Claims in full on or before the later of (i) 60 days after the Effective Date or (ii) as soon thereafter as the

allowed amount of such Claim can be determined and, if necessary, allowed by the Court pursuant to a Final Order.

**3.2.** <u>Priority Claims</u>: Except to the extent that any Entity entitled to payment of any Allowed Priority Claim agrees to less favorable treatment, the Debtor shall pay each Allowed Priority Claim in full on or before the later of (i) 60 days after the Effective Date or (ii) as soon thereafter as the allowed amount of such Claim can be determined and, if necessary, allowed by the Court pursuant to a Final Order.

**3.3.** <u>Priority Tax Claims</u>: Except to the extent that any Entity entitled to payment of any Allowed Priority Tax Claim agrees to less favorable treatment, the Debtor shall pay each Allowed Priority Tax Claim in full on or before the later of (i) 60 days after the Effective Date or (ii) as soon thereafter as the allowed amount of such Claim can be determined and, if necessary, allowed by the Court pursuant to a Final Order.

**4. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**. For purposes of the Plan, Claims and Equity Interests are classified as follows:

**4.1.** Class 1 shall consist of the Secured Claim of Moore County.

**4.2.** Class 2 shall consist of the Secured Claim of Paul Davis and Agnes Gioconda.

**4.3.** Class 3 shall consist of the Secured Claim of BHF Bank Aktiengesellschaft.

**4.4.** Class 4 shall consist of the Secured Claim of M.M. Warburg & Company.

**4.5.** Class 5 shall consist of the Secured Claim of (i) the Estate of Mel Danker and (ii) Jacqueline Danker, as their interests may appear, secured by the Danker Collateral.

**4.6.** Class 6 shall consist of the Secured Claim of Grover P. Hennings, et al.

**4.7.** Class 7 shall consist of the Secured Claim of Violet Portfolio, LLC.

**4.8.** Class 8 shall consist of the Secured Claim of Violet Portfolio Alpha, LLC.

**4.9.** Class 9 shall consist of the Secured Claim of the POA.

**4.10.** Class 10 shall consist of the Secured Claim of Palmer Course Design Company.

**4.11.** Class 11 shall consist of all Unsecured Claims.

**4.12.** Class 12 shall consist of the Equity Interests.

**5. TREATMENT OF CLASSES UNDER THE PLAN**. Claims and Equity Interests shall receive the following treatment under the Plan:

**5.1.**     Class 1, Secured Claims of Moore County shall be treated as follows:

**5.1.1.**      Moore County shall have an Allowed Secured Claim for the outstanding 2014 ad valorem property taxes due on the real properties titled in the name of the Debtor (Woodlake Partners, LLC, or its predecessor in interest, Woodlake Partners, Limited Partnership), plus any post-petition penalties and interest accruing under applicable non-bankruptcy law.

**5.1.2.**      Moore County will retain its separate Liens on the Debtor's real properties, respectively, and when such properties are sold, the properties will in each instance be transferred subject to the applicable Liens of Moore County.  Moore County shall look solely to the real properties for payment of such Secured Claim, and the automatic stay shall be terminated so as to allow Moore County to enforce its rights and remedies to collect payment of such Secured Claim from the real properties.

**5.1.3.**      The Class 1 Secured Claim of Moore County is unimpaired by the Plan. Moore County is deemed to have accepted the Plan.

**5.2.**     Class 2, Secured Claim of Paul Davis and Agnes Gioconda ("Davis") shall be treated as follows:

**5.2.1.**      Lot 509, Section 5, Woodlake Country Club shall be conveyed to Paul Davis and Agnes Gioconda, subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, but otherwise free and clear of all Liens, Claims, encumbrances and other interests of any kind, in full and complete satisfaction of the Allowed Class 2 Secured Claim.

**5.2.2.**      The Class 2 Secured Claim is impaired.  Holders of Allowed Claims in Class 2 are entitled to vote to accept or reject the Plan.

**5.3.**     Class 3, Secured Claim of BHF Bank Aktiengesellschaft ("BHF") shall be treated as follows:

**5.3.1.**      BHF shall have an Allowed Secured Claim in an amount to be determined by the Sale of the BHF Collateral, and shall receive the Net Sale Proceeds derived from such sale. In the event the BHF Collateral is sold for an amount in excess of the BHF Secured Claim, BHF shall be entitled to recover post-petition interest at the contract rate and reasonable attorneys' fees and costs as may be agreed between the Debtor and BHF

or allowed by the Court after notice and hearing pursuant to section 506 of the Bankruptcy Code.

5.3.2.    The Debtor shall sell, transfer and convey the BHF Collateral at the Sale, subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, to the extent applicable, but otherwise free and clear of all other Liens, Claims, encumbrances and other interests of any kind pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with all such Liens, Claims, encumbrances and other interests of any kind to attach to the proceeds of the BHF Collateral in the same order of priority as they attached to the BHF Collateral as of the Petition Date.

5.3.3.    The holder of the BHF Secured Claim shall be entitled to assert the Credit Bid Right at the Sale of the BHF Collateral in accordance with the bidding procedures approved by the Court.

5.3.4.    After the disbursement of all Net Sale Proceeds derived from the Sale of the BHF Collateral, any part of the Class 3 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall constitute an unsecured deficiency claim pursuant to section 506(d) of the Bankruptcy Code and entitled to the treatment provided for Unsecured Claims under the Plan.

5.3.5.    The Class 3 BHF Secured Claim is impaired by the Plan.  BHF is entitled to vote to accept or reject the Plan.

5.4.    Class 4, Secured Claim of M.M. Warburg & Company ("Warburg") shall be treated as follows:

5.4.1.    Warburg shall have an Allowed Secured Claim in an amount to be determined by the Sale of the BHF Collateral, and shall receive the Net Sale Proceeds derived from such sale after payment of the Class 3 BHF Secured Claim. In the event the BHF Collateral is sold for an amount in excess of the BHF Secured Claim and the Warburg Secured Claim, Warburg shall be entitled to recover post-petition interest at the contract rate and reasonable attorneys' fees and costs as may be agreed between the Debtor and Warburg or allowed by the Court after notice and hearing pursuant to section 506 of the Bankruptcy Code.

**5.4.2.** Solely to the extent the BHF Sale results in Net Sale Proceeds in excess of the Class 3 BHF Secured Claim, the Class 4 Warburg Secured Claim will receive the excess Net Sale Proceeds until paid in full or all such excess Net Sale Proceeds have been fully disbursed.

**5.4.3.** The holder of the Class 4 Warburg Secured Claim shall be entitled to assert the Credit Bid Right at the Sale of the BHF Collateral in accordance with the bidding procedures approved by the Court.

**5.4.4.** After the disbursement of all Net Sale Proceeds, any part of the Class 4 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall constitute an unsecured deficiency claim pursuant to section 506(d) of the Bankruptcy Code and entitled to the treatment provided for Unsecured Claims under the Plan.

**5.4.5.** The Class 4 Warburg Secured Claim is impaired. Warburg is entitled to vote to accept or reject the Plan.

**5.5.** Class 5, Secured Claim of (i) the Estate of Mel Danker and (ii) Jacqueline Danker, as their interests may appear ("Danker") shall be treated as follows:

**5.5.1.** Danker shall have an Allowed Secured Claim in an amount to be determined by the Sale of the Danker Collateral, and shall receive the Net Sale Proceeds derived from such sale. In the event the Danker Collateral is sold for an amount in excess of the Danker Secured Claim, Danker shall be entitled to recover post-petition interest at the contract rate and reasonable attorneys' fees and costs as may be agreed between the Debtor and Danker or allowed by the Court after notice and hearing pursuant to section 506 of the Bankruptcy Code.

**5.5.2.** The Debtor shall sell, transfer and convey the Danker Collateral at the Sale, subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, but otherwise free and clear of all other Liens, Claims, encumbrances and other interests of any kind pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with all such Liens, Claims, encumbrances and other interests of any kind to attach to the proceeds of the Danker Collateral in the same order of priority as they attached to the Danker Collateral as of the Petition Date.

**5.5.3.** The holder of the Danker Secured Claim shall be entitled to assert the Credit Bid Right at the Sale of the Danker Collateral in accordance with the bidding procedures approved by the Court.

**5.5.4.** After the disbursement of all Net Sale Proceeds, any part of the Class 5 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall be disallowed.

**5.5.5.** The Class 5 Danker Secured Claim is impaired by the Plan. Danker is entitled to vote to accept or reject the Plan.

**5.6.** Class 6, Secured Claim of Grover P. Hennings, et al ("Hennings") shall be treated as follows:

**5.6.1.** Hennings shall have an Allowed Secured Claim in an amount to be determined by the Sale of the Hennings Collateral, and shall receive the Net Sale Proceeds derived from such sale. In the event the Hennings Collateral is sold for an amount in excess of the Hennings Secured Claim as of the Petition Date, Hennings shall be entitled to recover post-petition interest at the contract rate and reasonable attorneys' fees and costs as may be agreed between the Debtor and Hennings or allowed by the Court after notice and hearing pursuant to section 506 of the Bankruptcy Code.

**5.6.2.** The Debtor shall sell, transfer and convey the Hennings Collateral at the Sale, subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, but otherwise free and clear of all other Liens, Claims, encumbrances and other interests of any kind pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with all such Liens, Claims, encumbrances and other interests of any kind to attach to the proceeds of the Hennings Collateral in the same order of priority as they attached to the Hennings Collateral as of the Petition Date.

**5.6.3.** The holder of the Hennings Secured Claim shall be entitled to assert the Credit Bid Right at the Sale of the Hennings Collateral in accordance with the bidding procedures approved by the Court.

**5.6.4.** After the disbursement of all Net Sale Proceeds, any part of the Class 6 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of

$0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall be disallowed.

**5.6.5.** The Class 6 Hennings Secured Claim is impaired by the Plan. Hennings is entitled to vote to accept or reject the Plan.

**5.7.** <u>Class 7, Secured Claim of Violet Portfolio, LLC ("Violet")</u> shall be treated as follows:

**5.7.1.** Violet shall have an Allowed Secured Claim in an amount to be determined by the Sale of the Violet Collateral, and shall receive the Net Sale Proceeds derived from such sale. In the event the Violet Collateral is sold for an amount in excess of the Violet Secured Claim as of the Petition Date, Violet shall be entitled to recover post-petition interest at the contract rate and reasonable attorneys' fees and costs as may be agreed between the Debtor and Violet or allowed by the Court after notice and hearing pursuant to section 506 of the Bankruptcy Code.

**5.7.2.** The Debtor shall sell, transfer and convey the Violet Collateral at the Sale, subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, but otherwise free and clear of all other Liens, Claims, encumbrances and other interests of any kind pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with all such Liens, Claims, encumbrances and other interests of any kind to attach to the proceeds of the Violet Collateral in the same order of priority as they attached to the Collateral as of the Petition Date.

**5.7.3.** The holder of the Violet Secured Claim shall be entitled to assert the Credit Bid Right at the Sale of the Violet Collateral in accordance with the bidding procedures approved by the Court.

**5.7.4.** After the disbursement of all Net Sale Proceeds, any part of the Class 7 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall constitute an unsecured deficiency claim pursuant to section 506(d) of the Bankruptcy Code and entitled to the treatment provided for Unsecured Claims under the Plan.

**5.7.5.** The Class 7 Violet Secured Claim is impaired by the Plan. Violet is entitled to vote to accept or reject the Plan.

**5.8.**     Class 8, Secured Claim of Violet Portfolio Alpha, LLC ("Violet Alpha") shall be treated as follows:

**5.8.1.**     Violet Alpha shall have an Allowed Secured Claim in an amount to be determined by the Sale of the Violet Alpha Collateral, and shall receive the Net Sale Proceeds derived from such sale. In the event the Violet Alpha Collateral is sold for an amount in excess of the Violet Alpha Secured Claim as of the Petition Date, Violet Alpha shall be entitled to recover post-petition interest at the contract rate and reasonable attorneys' fees and costs as may be agreed between the Debtor and Violet Alpha or allowed by the Court after notice and hearing pursuant to section 506 of the Bankruptcy Code.

**5.8.2.**     The Debtor shall sell, transfer and convey the Violet Alpha Collateral at the Sale, subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, but otherwise free and clear of all other Liens, Claims, encumbrances and other interests of any kind pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with all such Liens, Claims, encumbrances and other interests of any kind to attach to the proceeds of the Violet Collateral in the same order of priority as they attached to the Collateral as of the Petition Date.

**5.8.3.**     The holder of the Violet Alpha Secured Claim shall be entitled to assert the Credit Bid Right at the Sale of the Violet Alpha Collateral in accordance with the bidding procedures approved by the Court.

**5.8.4.**     After the disbursement of all Net Sale Proceeds, any part of the Class 8 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall constitute an unsecured deficiency claim pursuant to section 506(d) of the Bankruptcy Code and entitled to the treatment provided for Unsecured Claims under the Plan.

**5.8.5.**     The Class 8 Violet Alpha Secured Claim is impaired by the Plan. Violet is entitled to vote to accept or reject the Plan.

**5.9.** <u>Class 9, Secured Claim of the Woodlake Property Owners' Association, Inc. ("POA")</u> shall be treated as follows:

**5.9.1.** Solely to the extent any of the Sales of parcels subject to the liens asserted by the POA result in Net Sale Proceeds in excess of the Allowed Secured Claims on such parcels having a lien senior to the liens asserted by the POA, the Class 9 POA Secured Claim will receive the excess Net Sale Proceeds until the POA Liens on such parcels are paid in full or all such excess Net Sale Proceeds have been fully disbursed.

**5.9.2.** After the disbursement of all such Net Sale Proceeds, any part of the Class 9 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall constitute an unsecured deficiency claim pursuant to section 506(d) of the Bankruptcy Code and entitled to the treatment provided for Unsecured Claims under the Plan.

**5.9.3.** The Class 9 POA Secured Claim is impaired by the Plan. The POA is entitled to vote to accept or reject the Plan.

**5.10.** <u>Class 10, Secured Claim of Palmer Course Design Company ("Palmer")</u> shall be treated as follows:

**5.10.1.** Solely to the extent any of the Sales of parcels subject to the liens asserted by Palmer result in Net Sale Proceeds in excess of the Allowed Secured Claims on such parcels having a lien senior to the liens asserted by Palmer, the Class 10 Palmer Secured Claim will receive the excess Net Sale Proceeds until such Claim is paid in full or all such excess Net Sale Proceeds have been fully disbursed.

**5.10.2.** After the disbursement of all such Net Sale Proceeds, any part of the Class 10 Claim which has not been paid in full shall be deemed a Secured Claim in the amount of $0.00, the Lien securing such Claim voided pursuant to section 506(d) of the Bankruptcy Code, and the remainder of such Claim shall constitute an unsecured deficiency claim pursuant to section 506(d) of the Bankruptcy Code and entitled to the treatment provided for Unsecured Claims under the Plan.

**5.10.3.** The Class 10 Palmer Secured Claim is impaired by the Plan. Palmer is entitled to vote to accept or reject the Plan.

**5.11.**  <u>Class 11, Unsecured Claims</u> shall be treated as follows:

    **5.11.1.**  Each holder of an Allowed Claim in Class 11 will receive its Pro Rata share of the Available Cash in full and complete satisfaction, settlement, and release of such holder's Unsecured Claim.

    **5.11.2.**  The Class 11 Unsecured Claims are impaired by the Plan. Holders of Class 11 Unsecured Claims are entitled to vote to accept or reject the Plan.

**5.12.**  <u>Class 12,  Equity Interests</u> shall be treated as follows:

    **5.12.1.**  Equity Interests shall be extinguished and shall receive or retain no property.

    **5.12.2.**  The Class 12 Equity Interests are impaired. Holders of Class 12 Equity Interests are deemed to reject the Plan.

**6.  CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES.**  The Debtor shall utilize section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan with respect to any impaired Class that has not accepted or is deemed not to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**7.  MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

    **7.1.**  <u>Continuing Existence</u>:

    **7.1.1.**  From and after the Effective Date, the Debtor shall continue in existence under the control and direction of the Chief Restructuring Officer for the purpose of (i) winding down its affairs, (ii) conducting and consummating the Sales pursuant to the bidding procedures approved by the Court and in accordance with the Plan, (iii) liquidating, by conversion to cash or other methods, any remaining Assets of its Estate, as expeditiously as reasonably possible, (iv) enforcing and prosecuting claims, interests, rights and privileges of the Debtor and its estate not otherwise waived, released, or enjoined herein, (v) resolving Disputed Claims, (vi) administering the Plan and taking such actions as are necessary to effectuate the Plan, and (vii) filing appropriate tax returns.

    **7.1.2.**  The Chief Restructuring Officer shall serve in such capacity until the case is closed. In the event a Chief Restructuring Officer resigns, is unable to serve in such capacity, or is terminated by the Court "for cause" then a successor shall be appointed by the Court.

**7.1.3.** Upon the final consummation of the Plan, the filing of a final report and the entry of a final decree, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith.

**7.2.** <u>Liquidation of Assets</u>: The Plan contemplates that upon entry of the Confirmation Order all of the Debtor's Assets shall remain property of the Estate and shall not re-vest in the Debtor but instead will be liquidated and sold in accordance with the terms of the Plan. The Debtor under the direction of the Chief Restructuring Officer shall liquidate the Assets pursuant to sections 363(b) and 1123(a)(5)(D) of the Bankruptcy Code whereby:

**7.2.1.** The Debtor intends to engage, subject to Court approval, a marketing firm or broker to expose all properties to the market and facilitate the sale process. The Debtor shall conduct separate sales of the BHF Collateral, the Danker Collateral, the Hennings Collateral, the Violet Collateral, the Violet Alpha Collateral and the Magnolia Interests.

**7.2.2.** At the Sale of the BHF Collateral, holders of the BHF Secured Claim and the Warburg Secured Claim may exercise their respective Credit Bid Rights subject to the requirements of the bidding procedures, provided that (A) the Collateral shall be sold subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, to the extent applicable, and (B) irrespective of any Credit Bid Rights, a bidder must offer cash in an amount sufficient to satisfy (i) the amount owed at closing to the DIP Lender pursuant to the DIP Financing Order, (ii) a share of Administrative Expense Claims, as determined by the Court in the Order confirming the sale, (iii) costs of sale directly associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other costs directly related to the sale, and (iv) estimated quarterly fees payable to the Bankruptcy Court calculated on the basis of the sale price (excluding buyer's commission to a broker); and provided further, the holder of the Warburg Secured Claim must also offer cash sufficient to satisfy the BHF Secured Claim.

**7.2.3.** At the Sale of the Danker Collateral, holders of the Danker Secured Claim may exercise their Credit Bid Rights, provided that (A) the Collateral shall be sold subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, and (B) irrespective of any Credit Bid Rights, a bidder must offer cash in an amount sufficient to satisfy (i) a share of Administrative Expense Claims, as determined

by the Court in the Order confirming the sale, (ii) costs of sale directly associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other costs directly related to the sale, and (iii) estimated quarterly fees payable to the Bankruptcy Court calculated on the basis of the sale price (excluding buyer's commission to a broker).

**7.2.4.**     At the Sale of the Hennings Collateral, holders of the Hennings Secured Claim may exercise their Credit Bid Rights, provided that (A) the Collateral shall be sold subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, and (B) irrespective of any Credit Bid Rights, a bidder must offer cash in an amount sufficient to satisfy (i) a share of Administrative Expense Claims, as determined by the Court in the Order confirming the sale, (ii) costs of sale directly associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other costs directly related to the sale, and (iii) estimated quarterly fees payable to the Bankruptcy Court calculated on the basis of the sale price (excluding buyer's commission to a broker).

**7.2.5.**     At the Sale of the Violet Collateral, holders of the Violet Secured Claim may exercise their Credit Bid Rights, provided that (A) the Collateral shall be sold subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, and (B) irrespective of any Credit Bid Rights, a bidder must offer cash in an amount sufficient to satisfy (i) a share of Administrative Expense Claims, as determined by the Court in the Order confirming the sale, (ii) costs of sale directly associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other costs directly related to the sale, and (iii) estimated quarterly fees payable to the Bankruptcy Court calculated on the basis of the sale price (excluding buyer's commission to a broker).

**7.2.6.**     At the Sale of the Violet Alpha Collateral, holders of the Violet Alpha Secured Claim may exercise their Credit Bid Rights, provided that (A) the Collateral shall be sold subject to (i) Moore County 2014 and 2015 ad valorem taxes and (ii) 2015 POA dues, if applicable, and (B) irrespective of any Credit Bid Rights, a bidder must offer cash in an amount sufficient to satisfy (i) a share of Administrative Expense Claims, as determined by the Court in the Order confirming the sale, (ii) costs of sale directly

associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other costs directly related to the sale, and (iii) estimated quarterly fees payable to the Bankruptcy Court calculated on the basis of the sale price (excluding buyer's commission to a broker).

**7.2.7.**     At the sale of the Magnolia Interests, no Credit Bid Rights may be exercised. The purchaser of the Magnolia Interests shall acquire the assets and assume the obligations of Magnolia at Woodlake, LLC.

**7.2.8.**     Each Sale shall be conducted in accordance with such bidding procedures as may be approved by the Court, including but not limited to initial cash deposits in order to become a qualified bidder, minimum bids, minimum bid increments, and minimum cash components of credit-bids, and shall be subject to entry of an Order approving the respective sale (a "Sale Approval Order") which shall find that the successful bidder is a good faith purchaser entitled to all protections granted to such persons under section 363(m) of the Bankruptcy Code and other applicable Bankruptcy and non-bankruptcy law.

**7.2.9.**     Entry of a Sale Approval Order shall constitute a final determination as to, among others, the value of the property being sold for purposes (among others) of determining the extent to which any of the Secured Claims are "secured," "unsecured," or otherwise constitute Allowed Claims within the meaning of section 506 of the Bankruptcy Code.

**7.2.10.**     A conveyance of real property made pursuant to a Sale and in furtherance of implementation of the Plan as confirmed by the Court shall, pursuant to section 1146 of the Bankruptcy Code, be exempt from any revenue, documentary or transfer stamps or taxes due or payable to any city, county or state with respect to the transfer of the property.

**7.3.**     Executory Contracts and Leases:

**7.3.1.**     The Debtor shall assume and assign to the purchaser of the BHF Collateral (i) the existing Master Lease with Agricredit Acceptance, LLC and (ii) such other executory contracts and unexpired leases of the Debtor as may be designated by the successful bidder at the Sale of the BHF Collateral, and the purchaser of the BHF Collateral shall be responsible for the payment of any Claims for cure costs related to the

assumption by the Debtor and assignment to the successful bidder of such designated contracts or leases.

**7.3.2.** All executory contracts and unexpired leases not otherwise assumed and assigned pursuant to Section 7.3.1 shall be deemed rejected and entry of the order approving the sale of the BHF Collateral shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of such executory contracts and unexpired leases effective as of the Closing Date on the sale of the BHF Collateral. A Claim for damages arising from the rejection of an executory contract or unexpired lease contract shall be forever barred and shall not be enforceable against the Estate and no holder of any such Claim shall participate in any distribution under the Plan with respect to that Claim unless a Proof of Claim is served on the Debtor and filed with the Court within thirty (30) days after the Sale Approval Order, or such other deadline as may be set by the Court generally or with respect to any lease or contract rejected, and said Proof of Claim is determined to be an Allowed Claim, either because no timely objection is filed or because the Court allows the Claim after a timely filed objection.

**7.4.** Litigation:  The Debtor shall retain the exclusive right to pursue any and all post-petition claim objections, litigation, avoidance actions or Bankruptcy Causes of Action not otherwise waived, released or enjoined herein, and any and all such causes of action shall be brought in the Court and shall be governed by Bankruptcy Rules 7001 et seq.  Any compromise or other settlement of a controversy by or on behalf of the Debtor shall be approved in accordance with the Bankruptcy Rules.

**7.5.** Reporting:  A quarterly consummation status report shall be filed within thirty (30) days after the end of the calendar quarter in which the Effective Date occurs and after each calendar quarter thereafter until the filing of the Final Report.  The consummation status reports shall set forth a summary of the following:

**7.5.1.** The payments made or other treatment of each Class of Claims.

**7.5.2.** Whether the Debtor is in compliance with all distributions and payments required under the Plan.

**7.5.3.** The status of any pending litigation.

**7.5.4.** Any pending matters which may require further Court action.

**7.5.5.**  Projected date for filing a final report and request for entry of a Final Decree closing the Chapter 11 Case.

## 8.  EFFECT OF CONFIRMATION OF THE PLAN.

**8.1.**  <u>Satisfaction of Claims</u>.  As the Plan provides for the liquidation of all assets of the Estate and dissolution of the Debtor, the Plan does not provide for the discharge of any claims or liabilities.  However, all proceedings and court actions seeking to establish or enforce pre-petition liabilities and claims of any nature against property of the Estate or priorities received or retained by any creditor with respect to debts and obligations of the Debtor shall be stayed and treated as specifically provided for in the Plan.

**8.2.**  <u>Exculpation</u>.  From and after the Effective Date, the Released Parties shall neither have nor incur any liability to any holder of a claim for any act taken or omitted to be taken in connection with the Debtor's Chapter 11 Case, including the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation, consummation or approval of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that act or omission is determined in a final order to have constituted fraud, gross negligence, willful misconduct, ultra vires acts, or criminal conduct.  Any of the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## 9.  INJUNCTIONS AND STAYS.

**9.1.**  <u>Injunction</u>. Confirmation of the Plan and entry of the Confirmation Order will permanently enjoin the commencement, continuation, prosecution or collection by any Entity subsequent to the Effective Date, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan against the Debtor, including the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in Section 8; provided however, such injunction shall not prevent an Entity from enforcing the Debtor's obligations as provided in the Plan.

**9.2.** <u>Stays</u>. Unless otherwise provided in the Plan, the Confirmation Order or other Orders of the Court, all injunctions or stays generally provided for chapter 11 cases under section 362 of the Bankruptcy Code shall terminate upon Substantial Consummation of the Plan.

**10. PROVISIONS FOR RETENTION OF JURISDICTION AND PROSECUTION AND DEFENSE OF CLAIMS AND CAUSES OF ACTION.**  The Court shall retain and may exercise its jurisdiction for determination in this Chapter 11 Case of any objections to claims not disposed of prior to or as a result of the entry of the Confirmation Order, the final determination of any causes of action (including Bankruptcy Causes of Action) brought in the Court by the Debtor, and matters reasonably necessary to implement the Plan, including, but not limited to the following:

**10.1.** <u>General Jurisdiction</u>: Until the entry of a Final Decree, the Court shall retain jurisdiction pursuant to section 1142 of the Bankruptcy Code and Bankruptcy Rules 3020(d) and 3021 to the extent necessary to implement the Plan; to hear and determine all claims against the Debtor; to hear, determine, and enforce all causes of action (including all Bankruptcy Causes of Action) arising in, arising under, or related to this Chapter 11 Case and which may exist on behalf of the Debtor; and, to confirm after notice and hearing (except as otherwise provided herein) any proposed compromise of any cause of action (including all Bankruptcy Causes of Action).

**10.2.** <u>Causes of Action</u>:  The Debtor shall retain the right and standing to assert and shall have the sole and exclusive right to commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor (including Bankruptcy Causes of Action) which accrued and was asserted or capable of assertion by the Debtor as debtor-in-possession as of the Petition Date and that is not otherwise released, settled, enjoined or otherwise compromised by the terms of this Plan or the Confirmation Order.

**10.3.** <u>Specific Retention of Powers</u>:  In addition to the general provisions set forth above and notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date of the Plan, and the occurrence of Substantial Consummation of the Plan, the Court shall retain such jurisdiction over these Chapter 11 Cases as is legally permissibly, *inter alia*, by final order or judgment:

**10.3.1.** To classify, allow, disallow, determine, liquidate, reduce, reclassify, subordinate, estimate or establish the priority or secured or unsecured status (or proper Plan classification) of any Claim or Equity Interest including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims or Equity Interests, and to direct distributions of funds under the Plan, and to hear and determine any controversies pertaining thereto.

**10.3.2.** To hear and determine any and all applications, adversary proceedings or other matters arising out of or related to the Plan.

**10.3.3.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed.

**10.3.4.** To liquidate or estimate the amount of any claim, or to determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated claim.

**10.3.5.** To adjudicate all disputes with respect to claims or any Lien on any Asset of the Debtor.

**10.3.6.** To adjudicate all claims or controversies arising during the pendency of this Chapter 11 Case.

**10.3.7.** To recover all Assets and properties of the Debtor and its Estate, wherever located, including recoveries on all claims and causes of action brought or capable of being brought by or on behalf of the Debtor prior or subsequent to Substantial Consummation of the Plan that are not released, settled or otherwise compromised by the terms of this Plan.

**10.3.8.** To hear and determine matters covering federal, state, and local taxes pursuant to sections 346, 505, and 1146 of the Bankruptcy Code.

**10.3.9.** To allow fees and reimbursement of Administrative Expense Claims including the expenses of professional persons employed during this Chapter 11 Case or any other person or entity applying for compensation.

**10.3.10.** To construe or enforce the Plan so as to effectuate payments thereunder or to compel performance by any person reasonably necessary to achieve Final Consummation in accordance with the provisions hereof.

**10.3.11.** To make and enforce such orders as are necessary or appropriate to implement, carry out or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order.

**10.3.12.** To enter such orders as may be necessary and proper for the orderly administration of the Debtor's bankruptcy proceedings.

**10.3.13.** To decide such other matters and for such other purposes as may be provided for in the Confirmation Order.

**10.3.14.** To resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any cure amount Claims.

**10.3.15.** To modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Confirmation Order; approve the modification of or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan.

**10.3.16.** To issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order.

**10.3.17.** To determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in

connection with the Plan, the Disclosure Statement or the Confirmation Order.

    **10.3.18.**    To consider and approve the compromise and settlement of any Claim, Equity Interest or Liability by, on behalf of or against the Estate, to the extent that Court approval is required or permitted;

    **10.3.19.**    To resolve any matter relating to the sale, refinancing, liquidation, abandonment or other disposition of any Assets.

    **10.3.20.**    To enforce or clarify any orders previously entered by the Court in this Chapter 11 Case.

    **10.3.21.**    To enter a Final Decree closing this Chapter 11 Case.

    **10.3.22.**    To hear any other matter not inconsistent with the Bankruptcy Code.

    **10.4.**    <u>Other Courts</u>.  If the Court abstains from exercising, declines to exercise or is otherwise without jurisdiction over any matter arising out of this Chapter 11 Case, this Section 10 shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**11. PROVISIONS FOR AMENDMENT OF THE PLAN.**  The Plan may be modified as follows:

    **11.1.**    <u>Non-material Amendment</u>:  This Plan may be altered or modified by the Debtor after its submission for acceptance and before or after its confirmation, without notice and hearing, if the alteration or modification does not adversely change the priority, allowance, or treatment of the claim of any creditor as provided in section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019.

    **11.2.**    <u>Material Amendment</u>:  This Plan may be altered or modified by the Debtor after submission for acceptance and before or after confirmation in a manner which adversely affects the interests of creditors only (i) as provided in section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019, or (ii) with the written consent of the creditor or creditors who are adversely affected.

**12. OBJECTIONS TO CLAIMS, RESERVES AND DISTRIBUTIONS.**

    **12.1.**    <u>Claims</u>: The Debtor or any party in interest may file an objection to any Claim within ninety (90) days after the Effective Date.  Objections not filed within such time shall be deemed waived unless the period within which to file objections to claims is extended by Order of the Court in response to one or more motions for such extension filed prior to the

expiration of the then existing period for such objections to be filed. THE ABSENCE OF AN OBJECTION TO A CLAIM PRIOR TO THE CONFIRMATION DATE, WHETHER AS TO A SCHEDULED OR FILED CLAIM, SHALL NOT BE DEEMED AN ACCEPTANCE OF ANY CLAIM NOR A WAIVER OF THE RIGHT TO OBJECT TO ANY CLAIM, AND THE HOLDER OF ANY SUCH CLAIM SHALL NOT BE ENTITLED TO ASSERT RELIANCE UPON ANY IMPLIED ACCEPTANCE OF SUCH CLAIM WHEN VOTING TO ACCEPT OR REJECT THE PLAN.

**12.2.** Reserves: Any Claim, or portion thereof, which is to be paid in cash under the Plan and which is a Disputed Claim, shall be protected by requiring the Debtor to segregate and set aside in an escrow account a reserve based on the Court's estimate of such Claim and sufficient to treat said Claim in the same fashion as though the objection were denied and such Claim were deemed an Allowed Claim. The reserve so segregated shall be distributed in accordance with the Plan in the event the objection is overruled or a dispute is resolved in favor of the party asserting the Claim. In the event the Disputed Claim is disallowed, the retained cash so segregated shall be made available for distribution in accordance with the provisions of this Plan, with the disallowed claim being excluded from the appropriate Class.

**12.3.** Distributions.

**12.3.1.** In the event that any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

**12.3.2.** Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the schedules filed with the Court unless superseded by the address as set forth on the proof of claim filed by such holders or other subsequent writing notifying the Debtor of a change of address.

**12.3.3.** In the event the Debtor fails to make a distribution under the Plan by the required date, then the Debtor shall be in default under the terms of the Plan only after the holder of such Allowed Claim has given written notice of such failure to the Debtor and its counsel and a period of ten (10) days has passed without such failure having been cured or remedied.

**12.3.4.**    No interim or final distribution shall be made in an amount less than $5.00, and any such distributions shall instead be paid over to the U.S. Treasury as provided in section 347 and Bankruptcy Rule 3010 for small dividends as in a Chapter 7 proceeding.

**12.3.5.**    If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor has been notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without additional interest, from the date of the first attempted distribution. All unclaimed distributions which exist as of the date of the final distribution to holders of Allowed Claims shall be paid over to the U.S. Treasury as provided in section 347 and Bankruptcy Rule 3011 for unclaimed distributions as in a Chapter 7 proceeding.

**12.3.6.**    Checks issued in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**12.4.**    Setoffs.  The Debtor may, in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor may possess against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that they may possess against such holder; and provided further, that any claims of the Debtor arising before the Petition Date shall first be set off against Claims against the Debtor arising before the Petition Date.

## 13. GENERAL PROVISIONS

**13.1.**    Debtor.  Until the entry of a Final Decree and completion of all payments contemplated by the Plan, or otherwise ordered by the Court, the Debtor shall continue to have and exercise all of the powers and duties of a debtor-in-possession as provided in section 1107 of the Bankruptcy Code, subject to the control and direction of the Chief Restructuring Officer.

**13.2.**    Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtor, holders of Claims and Equity Interests, and their respective successors and assigns.

**13.3.**   <u>Notices</u>.   Any notice required to be provided to parties in interest under the Bankruptcy Code or Rules, or under the Plan or any documents executed in conjunction with the Plan, shall be in writing and served by (a) regular mail, postage prepaid, (b) electronic noticing through the Court's ECF system, or (c) overnight delivery service, addressed to the appropriate parties and with copies of any such notice to be sent to the Bankruptcy Administrator and to counsel for the Debtor.

**13.4.**   <u>Governing Law</u>.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), or, as to corporate matters, the laws of the jurisdiction in which the Debtor is incorporated, the laws of the State of North Carolina shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.


Dated: January 30, 2015


/s/ Richard M. Hutson, II

Chief Restructuring Officer
hutson@hhplaw.com
Hutson Law Office
PO Drawer 2252-A
Durham, NC  27702
Telephone: 919-683-1561


/s/John A. Northen

Counsel for the Debtor:
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441